**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **PETER DAVID SCHIFF,**<br><br>Plaintiff,<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**,<br><br>Defendant. |

Case No. 1:24-cv-2230 (TNM)

## <u>MEMORANDUM OPINION</u>

Peter Schiff founded a bank, but an international tax enforcement body shut it down on suspicion of tax evasion in 2022.  The end of the bank marked the start of this case.  Schiff, seeking a plethora of information related to the investigation into himself and his bank, has twice filed requests with the Internal Revenue Service under the Freedom of Information Act ("FOIA") since the 2022 action.  The IRS disclosed some documents, but not enough to satisfy Schiff.  So he turned to this Court hoping to get more.

Having reviewed the parties' cross motions for summary judgment, the Court will grant each in part and deny each in part.  In short, the IRS ran an adequate search in response to Schiff's first FOIA request, but it failed to show a FOIA exemption shielded the resulting material from disclosure.  On Schiff's second request, the IRS demonstrated that Schiff failed to reasonably describe a few items and thus need not search for them, but the same is not true for the rest.

**I.**

An international body of taxing authorities called the Joint Chiefs of Global Tax Enforcement ("J5") held two press conferences in 2022.  October Request at 23, ECF No. 19-1;

Press Release at 34, ECF No. 19-1.  There, J5 announced it was suspending the operations of the Euro Pacific International Bank following "part of a series of internationally led investigations" targeting tax evasion it had run since 2020.  *See* Press Release at 34.  While J5 viewed its actions as key to "bringing" tax criminals "to justice," *id.*, Peter Schiff, the bank's founder, did not.  Schiff Decl. ¶¶ 11, 22, ECF No. 19-1.  The IRS is one of J5's members.  *Id.* ¶ 17.  To help clear his name, Schiff submitted two FOIA requests to the IRS over the next two years, seeking various materials related to himself and to his bank.  *Id.* ¶¶ 40, 44, 53.

He filed his first FOIA request in the fall of 2023.  Def.'s SMF ¶ 1, ECF No. 18-2.  Schiff asked for six items related to the two press conferences.  He wanted: (1) audio or video recordings of the second press conference; (2) a transcript of what reporters asked and speakers answered at the conferences; (3) a list of reporters who attended; (4) a list of everyone that received a media alert about the conference; (5) copies of material related to the press conference that the IRS posted on its website; and (6) communications with Chief Jim Lee, the head of the IRS's Criminal Investigation group about his decision to hold the press conference.  *Id.* ¶¶ 1, 7–8, 10; Pl.'s SMF ¶¶ 9–10, ECF No. 19-2.

An IRS official spearheaded a manual search on most of the request's items while the IRS e-Discovery team handled the sixth item, which in part sought emails from Chief Lee, who had by then retired and thus could not perform the search himself.  Def.'s SMF ¶¶ 17–20.  These efforts resulted in 473 pages of responsive records.  *Id.* ¶ 100.  Citing various FOIA exemptions, the IRS withheld 264 pages in full and 172 in part.  *Id.* ¶ 102.

Schiff filed a second FOIA request in June 2024.  *Id.* ¶ 118; June Request at 26, ECF No. 19-1.  This time, he aimed higher.  Schiff sought not just records about a press conference or two, but all IRS records with his name or touching on several other subjects.  June Request at 26.

He listed twenty categories of records he wanted, and his request spans multiple pages. *Id.* The

end of the request, though, summarizes most of the twenty items sought. It asked for:

> All records, documents, or communications prepared by, received by, or maintained by the IRS which mention any of the following terms:
> a. Peter Schiff
> b. Euro Pacific International Bank Inc.
> c. Euro Pacific Bank
> d. Joint Chiefs of Global Tax Enforcement
> e. J5
> f. Atlantis
> g. The Atlantis Investigation
> h. Operation Atlantis
> i. Office of the Commissioner of Financial Information
> j. OCIF
> k. The tax authority, or authorities, of the following countries:
>   i. United States
>   ii. United Kingdom
>   iii. Australia
>   iv. Canada
>   v. Netherlands

*Id.* at 28–29.

The request specified that the relevant time frame "for the creation of or receipt of

records" was "to include January 1, 2020, through the time that the agency conducts an adequate

search for records." *Id.* at 29. That same month, the IRS emailed Schiff describing his request

as "overly broad," stating that unless Schiff clarifies his request through revision, the IRS will

remain "unable to process" it. *See* June 2024 Letter at 40, ECF No. 19-1. Schiff responded to

the IRS that "[n]othing could be further from the truth," as his request "clearly laid out" what he

wanted. *Id.* Back-and-forth about Schiff's FOIA requests persisted for several months, but the

parties never came to an agreement. Def.'s SMF ¶¶ 144–51. Instead, they turned to this Court to

resolve the dispute. *See* Joint Status Report, ECF No. 17. Both parties have cross-moved for

summary judgment.  *See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 18; Pl.'s Opp'n and

Mot. for Summ. J. ("Pl.'s Mot."), ECF 19.  These motions are now ripe.[1]

**II.**

To obtain summary judgment, a movant must show that "there is no genuine dispute as to

any material fact" and that he "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Court credits the nonmovant's factual allegations and draws all reasonable inferences in his

favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "The vast majority of

FOIA cases can be resolved on summary judgment."  *Brayton v. Off. of U.S. Trade Reps.*, 641

F.3d 521, 527 (D.C. Cir. 2011) (cleaned up).

FOIA exposes "agency action to the light of public scrutiny."  *DOJ v. Reps. Comm. for

Freedom of the Press*, 489 U.S. 749, 772 (1989) (cleaned up).  The statute requires an agency to

release records not otherwise exempt from disclosure when it receives a request that "reasonably

describes such records."  5 U.S.C. § 552(a)(3)(A).  An agency responding to a FOIA request

"must conduct a search reasonably calculated to uncover all relevant documents and, if

challenged, must demonstrate beyond material doubt that the search was reasonable."  *Truitt v.

Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up).  The agency can carry its burden

with an affidavit "show[ing], with reasonable detail, that the search method . . . was reasonably

calculated to uncover all relevant documents."  *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C.

Cir. 1990).

An agency claiming a FOIA exemption bears the burden of showing the exemption

applies to the withheld information.  *See ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir.

---

[1] The Court has federal question jurisdiction over the parties' claims, which they bring under
FOIA.  *See* 28 U.S.C. § 1331.

2011).  That burden remains "[e]ven when the requester files a [cross] motion for summary

judgment." *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  At that

point, the government still "ultimately [has] the onus of proving that the [documents] are exempt

from disclosure." *Id.* (cleaned up).  If the government cannot carry its burden, it must disclose

the requested materials.

### III.

This case involves two FOIA requests, each posing distinct issues.  On Schiff's first

request (seeking mostly press conference materials), the parties dispute whether the IRS

conducted a reasonable search and whether the IRS properly invoked various exemptions under

FOIA.  On Schiff's second request (seeking a sweeping array of records mentioning several

terms), the issue is whether Schiff reasonably described the records he sought.  Taking each

request in turn, the Court rules for the IRS on the adequacy of its first search but not its

invocation of FOIA's exemptions.  On the second search, it rules for the IRS on the final item in

Schiff's second request but otherwise finds Schiff reasonably described the records he sought.

### A.

Consider Schiff's first request.  To recap, he asked for various materials connected to the

J5 press conferences, including transcripts, guest lists, and planning materials.  October Request

at 23–24.  The issue with this request is twofold:  Schiff claims (1) that the IRS failed to run an

adequate search; and (2) that the IRS improperly invoked various FOIA exemptions.  While the

IRS conducted an adequate search, it has not shown FOIA's exemptions apply.

### i.

Look to the search's adequacy first.  The "touchstone for whether an agency has

conducted an adequate search is reasonableness." *Machado Amadis v. DOJ*, 388 F. Supp. 3d 1,

22 (D.D.C. 2019), *aff'd sub nom. Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020). Put a different way, did the agency run a search "reasonably calculated to uncover all relevant documents[?]" *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). This reasonableness question, to be clear, "is not whether any further documents might conceivably exist." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam). Indeed, courts judge "the adequacy of a FOIA search . . . not by the fruits of the search, but by the appropriateness of [its] methods." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

Agencies have discretion to craft searches meeting this standard and to decide whether additional searches are unlikely to produce any marginal return. *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003). To make the required showing, agencies may rely on "relatively detailed and non-conclusory" affidavits. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up). Agency declarations are given "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (cleaned up).

By those lights, the IRS met its obligation to run an adequate search. After receiving Schiff's request, it contacted the IRS's Media Relations Office and Criminal Investigations Unit to ask if either had materials about the June press conferences. Feldscher Decl. ¶ 10, ECF No. 18-3. This start led to the Chief of the Criminal Investigations. *Id.* ¶¶ 38, 51. Because that official no longer worked at the IRS, the IRS's eDiscovery team searched his data with the terms "press conference" and "OCIF." *Id.* ¶¶ 18, 20, 52–53. Meanwhile, other IRS officials conducted manual record searches. *Id.* ¶¶ 41, 45, 47–50. They sorted through emails, media advisories, and press releases. *Id.* ¶¶ 41, 48–50, 53–56. One also confirmed that the IRS lacked audio or video recordings of the press conferences or a list of reporters who attended (both items would

6

have been responsive to various parts of Schiff's request). *Id.* ¶ 41 n.5. After those efforts resulted in hundreds of pages in responsive documents, the IRS stopped, concluding that it had searched all locations likely to contain responsive documents. *Id.* ¶ 57.

This explanation passes muster. Through a "relatively detailed and non-conclusory" description, *SafeCard Servs.*, 926 F.2d at 1200 (cleaned up), the IRS paints a picture of a good faith, reasonable search effort. Given the "dearth of evidence" to the contrary, *Perry*, 684 F.2d at 128, the Court finds the IRS's search adequate.

Schiff barely pushes back on that conclusion. He asserts that the IRS "failed to conduct an adequate search for records responsive to this request, a position supported by existing precedent on the issue." Pl.'s Mot. at 8–9. But beyond a pair of generic rule statements, he never shows what precedent supposedly helps him and why. It is one thing to cite, as Schiff does, the propositions that an "agency must show . . . that it has conducted" a reasonable search, and that summary judgment is improper if a search "leaves substantial doubt" about its "sufficiency." *Id.* at 9 (cleaned up). But it is an entirely different undertaking to explain why the IRS flunks those tests here. Schiff never bothers trying.

**ii.**

The IRS stumbles on the next question—whether it properly withheld responsive material under one of FOIA's exemptions.

FOIA sets forth nine exemptions to its otherwise broad disclosure mandate. 5 U.S.C. § 552(b). When an agency invokes an exemption to withhold documents, recall that it "bears the burden of proving the applicability of claimed exemptions." *See ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). Courts construe these exemptions narrowly, *see Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011), and review their applicability de novo, *see King v. DOJ*,

830 F.2d 210, 217 (D.C. Cir. 1987).  Again, the agency may rely on declarations explaining why a FOIA exemption applies to withheld information.  *See Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018).

Showing an exemption applies is only part of the equation, though.  Under a 2016 amendment to FOIA, an agency may not withhold exempt materials unless it "reasonably foresees that disclosure would harm an interest protected by" a FOIA exemption.  5 U.S.C. § 552(a)(8)(A)(i).  The agency, in other words, must set out in a "focused and concrete" way, the harm that would result from disclosure, including the basis and likelihood of that harm.  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).  Only upon making these "two showings" may an agency properly withhold the relevant material.  *Reps. Comm. for Freedom of the Press v. USCBP*, 567 F. Supp. 3d 97, 110 (D.D.C. 2021).

The IRS invoked three of FOIA's nine exemptions to justify withholding many documents.  *See* Def.'s Mot. at 13–15 (invoking Exemptions 5, 7(A), and 7(E)).  Starting from the top, Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  More plainly, Exemption 5 allows agencies to withhold materials normally privileged in litigation.  *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997).  That includes documents protected by the deliberative process privilege, the attorney-client privilege, and the work-product doctrine.  *Id.*

The IRS invokes only the deliberative process privilege.  Def.'s Mot. at 13.  It is the old standby for agencies seeking to withhold documents from FOIA petitioners.  The deliberative process privilege shields from disclosure the opinions, recommendations, and deliberations that comprise some part of a process through which the agency formulates decisions and policies.

8

*See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975).  Of course, that does not include documents embodying a final decision "because once a decision has been made, the deliberations are done."  *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021); *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (noting that pre-decisional documents are "generated before the adoptions of an agency policy").

Next is Exemption 7(A).  Exemption 7(A) protects from disclosure "records or information compiled for law enforcement purposes," the production of which "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  It applies when material "relates to a concrete prospective law enforcement proceeding."  *Juarez v. DOJ*, 518 F.3d 54, 58 (D.C. Cir. 2008) (cleaned up).  That means that if an "investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies."  *Id.*

Finally, Exemption 7(E) is slightly different.  Specifically, it protects records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Meeting this standard requires a "logical[]" showing, rather than a "highly specific" one, as to how releasing the requested information "might create a risk of circumvention of the law."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (cleaned up).

The IRS has not met its burden on any score.  The Court considers each exemption separately.

*Exemption 5.* Take its stance on Exemption 5. The IRS claims that Exemption 5's deliberative process privilege applies to many of its withheld documents. It speaks in broad strokes and asserts that it withholds records containing "intra-agency letters, emails, or equivalent communication generated in preparing for external presentations or press conferences that reflect the opinions, recommendations, and deliberations of IRS personnel." Def.'s Mot. at 15. Its brief provides no more detail. *Id.* Neither does the declaration it submits. *See* Feldscher Decl. ¶ 61 (noting that relevant records "contain intra-agency letters, emails, or equivalent communications generated in the course of preparing for external presentations or press conferences that reflect the opinions, recommendations, and deliberations of IRS personnel that may or may not have been the ultimate grounds for a final agency action"). Its *Vaughn* index, too, leaves much to be desired. One entry, for instance, invokes the deliberative process privilege for an email "discussing OCIF press event" without more. *Vaughn* index at 38, entry 381, ECF No. 18-3.[2] Others mention emails "about techniques and procedures for law enforcement investigations or prosecutions" and "employee telephone numbers" with no mention of any decision-making or deliberative process. *See e.g.*, *id.* entry 387; *id.* at 42, entry 473.

These emails *could* have involved some kind of decision-making about the press conferences or other law enforcement policy, but they also could have merely relayed finalized, "factual information" on any of these topics. *Coastal States Gas Corp*, 617 F.2d at 867. That is a problem. The "deliberative process privilege is so dependent upon . . . individual document[s]," *id.*, and the IRS has failed to tether several to any such deliberative process. It makes no difference that some entries refer to "drafts" or items that may more obviously fall under the deliberative process umbrella, *see, e.g.*, *Vaughn* index at 37, entry 345. Having failed

---

[2] *Vaughn* index entry numbers refer to the first page of the withheld item.

to show the Exemption applies to "*each* withheld record at issue," *Hardy v. ATF*, 243 F. Supp. 3d 155, 174 (D.D.C. 2017) (emphasis added) (cleaned up), the IRS has not met its burden.

And that is only one reason Exemption 5 does not work.  The IRS falls far short on its separate obligation to show that disclosure would cause it foreseeable harm.  Recall that the 2016 Amendment to FOIA imposes this requirement even if an agency has shown an exemption applies.  The D.C. Circuit has elaborated on the foreseeable-harm requirement in the deliberative-process setting more than once.  *See Machado Amadis v. Dep't of State*, 971 F.3d at 370; *Reps. Comm.*, 3 F.4th at 370.  In doing so, it has clarified that agencies must provide more than a "perfunctory state[ment]" that "disclosure of all the withheld information—regardless of category or substance" would "jeopardize the free exchange of information" among agency officials.  *Reps. Comm.*, 3 F.4th at 370 (cleaned up); *Machado Amadis*, 971 F.3d at 371 (recognizing that agencies "cannot simply rely on generalized assertions that disclosure could chill deliberations" (cleaned up)).  Instead, explanations must provide a "focused and concrete demonstration" on why the "particular type of material at issue will, in the specific context of the agency action at issue actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370.

The IRS provides exactly what the D.C. Circuit has found insufficient.  It never mentions the 2016 Amendment's foreseeable harm requirement.  Instead, in "just" one "umbrella paragraph[]" that "purport[s] to sweepingly address *all* of the deliberative information in the case," *id.* (cleaned up), it claims that disclosure would "chill free and open discussions among employees about how to communicate information to the public about criminal investigations." Def.'s Mot. at 15.  It adds that disclosure "could unnecessarily cause confusion if any official statements were not consistent with the deliberations."  *Id.*  That is the extent of the IRS's

11

foreseeable harm discussion.  And half of it involves only the kind of "hypothesized assertion of harm" the D.C. Circuit has rejected.  *Reps. Comm.*, 3 F.4th at 371 (faulting the agency for withholding documents that "could" have a "negative effect on agency decision-making"); *see* Def.'s Mot. at 15 (asserting that disclosure "could" cause confusion).  None of its *Vaughn* index entries invoking the deliberative process privilege even mention foreseeable harm.  *See e.g.*, *Vaughn* index at 31, entries 26, 28–29, 33, 35.  And the declaration recites the same "sweeping" and "undifferentiated" explanation for all records allegedly protected by the deliberative process privilege.  *Reps. Comm.*, 3 F.4th at 372; Feldscher Decl. ¶ 61.  Aggregating these materials, the IRS's efforts on foreseeable harm "may generously be described as scanty."  *Reps. Comm.*, 3 F.4th at 370 (cleaned up).  Lacking detail or specificity about the records at issue, the deliberations that took place, or the harms to come, the IRS has not met its burden.

To be sure, "even without a sufficient explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm."  *USCBP*, 567 F. Supp. 3d at 110 (quoting *Reps. Comm.*, 3 F.4th at 372)).  But the context and purpose must "make the foreseeability of harm *manifest*" for withheld information to suffice on their own.  *Reps. Comm.*, 3 F.4th at 372 (emphasis added).  The D.C. Circuit found that bar met, for instance, where specific emails between high-ranking FBI officials covered how to respond to a specific, "ongoing crisis" and thus showed foreseeable harm through their "context and purpose" alone.  *Id.*

This case is different.  While the press conferences that prompted Schiff's FOIA request covered J5's tax crime work, its focus spanned across "a series" of investigations, *see* Press Release at 34.  The plethora of documents the IRS withholds under Exemption 5 could touch on any number of those law enforcement efforts.  While some might have involved planning for a

"crisis," *Reps. Comm.*, 3 F.4th at 372, others could have concerned mere press conference logistics.  The record is unclear, so foreseeable harm is less than "manifest."  *Id.*

*Exemption 7(A).*  The IRS suffers from similar issues on Exemption 7(A).  Recall that Exemption 7(A) allows agencies to withhold records that "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  "The agency must show that the release of the records reasonably could be expected to cause some distinct harm to pending or imminent enforcement proceeding or investigation."  *Shapiro v. DOJ*, 78 F. Supp. 3d 508, 517 (D.D.C. 2015).  "[V]ague" descriptions about "ongoing investigations" are not enough.  *See Citizens for Resp. & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1098 (D.C. Cir. 2014).

But that is all the IRS supplies.  It asserts only that records withheld under Exemption 7(A) "describe[] ongoing investigations," and that their disclosure "would harm IRS law enforcement efforts by prematurely revealing information indicating the strategy, scope, and direction of the ongoing investigation."  Def.'s Mot. at 16–17.  Indeed, every *Vaughn* index entry citing Exemption 7(A) includes the same boilerplate language.  *See e.g.*, *Vaughn* index at 28–30 entries 1–6, 8–11 (repeatedly claiming that "[d]isclosure would harm IRS law enforcement efforts by prematurely revealing information indicating the strategy, scope, and direction of the ongoing investigation").  Nowhere in those descriptions does the IRS specify what investigation or enforcement proceeding disclosure would disrupt.  Indeed, the press conferences commented on "a series of internationally led investigations," and noted that J5 planned to continue its work on "hundreds of civil and criminal investigations" going forward.  Press Release at 34–35.  Would disclosure harm all these investigations?  Why?  The IRS did not say, so neither can the Court.  *Cf. Juarez*, 518 F.3d at 58 (applying the exemption where documents concerned the plaintiff's investigation that "remains ongoing");  *Houser v. Church*, 486 F. Supp. 3d 117, 139

13

(D.D.C. 2020) (applying the exemption where the IRS specified that disclosing materials from "plaintiff's criminal investigation" would harm its ongoing efforts to monitor plaintiff). The IRS has not met its burden to trigger this exemption.

*Exemption 7(E).* The IRS last takes refuge in Exemption 7(E). But it is not a habitable one. This exemption permits withholding of "information compiled for law enforcement purposes" when release of that information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) requires agencies to specify what technique or procedure is "at stake." *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1102. A "verbatim recitation of the statutory standard" is an "inadequate" way to make that showing. *Id.* Yet verbatim recitation is (again) what the IRS gives. Its *Vaughn* index entries citing Exemption 7(E) look identical. *See generally*, *Vaughn* index at 28–41. Each asserts that "[d]isclosure of law enforcement information would harm law enforcement investigations or prosecutions, by exposing law enforcement techniques and procedures." *See e.g.*, *id.* at 29, entry 9. All its brief adds is a gesture to records allegedly showing "updates to personnel and operational procedures in the criminal investigations unit" without a clear citation to those records, much less a justification for their nondisclosure separate from the statutory language. Def.'s Mot. at 17. That is not enough.

To sum up, while the IRS conducted a reasonable search, its success ends there. The IRS falls short of its burden to show any of its claimed FOIA exemptions justify its withholdings.

14

**B.**

Now turn to Schiff's second FOIA request.  To recap this lengthy demand, Schiff asked for all IRS records with his name, the name of his bank, and, to round things out, all documents that so much as mention any tax authority from five countries.  *See* June Request 28–29.  The sole issue on the second FOIA request is whether Schiff "reasonably described" the material he wanted.

All FOIA requests must "reasonably describe[]" the records sought.  5 U.S.C. § 552(a)(3)(A); *see also* 28 C.F.R. § 16.3(b) (stating that a FOIA requester must "describe the records sought in sufficient detail to enable Department personnel to locate them with a reasonable amount of effort").  Requests can fail the "reasonably describes" test in multiple ways.  *See Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022).  First, "vague words and descriptions" will not suffice.  *Id.*  The "linchpin inquiry" on this matter "is whether the agency is able to determine precisely what records (are) being requested."  *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (cleaned up).  The "number of records" a request may produce "appears to be irrelevant" to that assessment.  *Id.* What matters is solely "whether they have been reasonably described."  *Id.* (cleaned up).

Second, agencies need not respond to a request—whatever its wording—that would require an "unreasonably burdensome" search.  *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 271. The focus of this test is whether agency employees can locate responsive records "with a reasonable amount of effort."  *See Truitt*, 897 F.2d at 545 n.36.  So "[e]ven when a request reasonably describes documents, the attendant burden of production can be so heavy that the agency need not respond."  *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 272.  The agency has the

burden of providing a "sufficient explanation as to why such a search would be unreasonably burdensome." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995).

At issue is only the first path—vague words and descriptions. The IRS faults Schiff's second request just for its failure to provide "insight into the specific topic of types of records sought" without making any claims about how burdensome the resulting search would be. *See* Def.'s Mot. at 18–19. In fact, the IRS forgoes mention of unreasonably burdensome searches until its Reply, and even there, it distances itself from the argument. *See* Def.'s Reply at 13, ECF No. 21 ("Because Schiff has failed to meet his initial burden to submit a valid FOIA request, the agency need not demonstrate that Schiff's FOIA invalid request creates an undue burden."); *see id.* at 14 ("At bottom, a FOIA requester must reasonably describe records first before any inquiry into whether a reasonably described request is overly burdensome."). The Court therefore considers only whether Schiff's adequately clarified what he wanted.

Starting from the top, Schiff requests "[a]ll records, including communications and notes, describing or mentioning Peter Schiff." June Request at 26. A few other requests look similar but seek something different. He wants all "records including communications and notes, describing or mentioning Euro Pacific Bank," and all "records, including communications and notes, describing or mentioning Euro Pacific International Bank Inc." *Id.* at 27. Each of these items reasonably describes what Schiff wants. "Regardless of how onerous it might be to locate" the volume of records mentioning Schiff or the bank, "there can be no dispute about which items" he requests—records in the IRS's possession with his or the bank's name "or any descriptor obviously referring to him" or the bank. *See Shapiro v. CIA*, 170 F. Supp. 3d 147, 154 (D.D.C. 2016) (finding that a request for "any and all records . . . mentioning . . . Nelson Mandela" reasonably described the desired material). Indeed, for these kinds of requests,

16

"responsive documents could probably be found with a simple keyword search across agency databases." *Cf. Am. Ctr. for L. & Just. v. DHS*, 573 F. Supp. 3d 78, 85 (D.D.C. 2021). This differentiates Schiff's case from those that, for example, seek documents that "regard[] in any way" a certain subject. *Id.* (rejecting a request seeking all documents "referencing or regarding in any way" eight topics about immigration); *see also Cable News Network v. FBI*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) (dismissing a request for records that "relate in any way to" certain subject areas). In that scenario, an agency cannot simply run a keyword search but is left in a "hopeless muddle without clear guidance about what documents" matter to the request. *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 85. Here, in contrast, the IRS is left with "virtually no guesswork" as to what Schiff wants, *Shapiro*, 170 F. Supp. 3d at 154, so it cannot shirk compliance obligations by discounting Schiff's precision. *Id.*

These requests take care of many others. That is because several requests seek records on some subject that also "mention Peter Schiff." June Request at 26; *see, e.g.*, *id.* at 26–28 (seeking (1) "records . . . mentioning communications between any IRS employee and any tax authority of Canada and which mention Peter Schiff"; (2) "records . . . describing the Joint Chiefs of Global Tax Enforcement (J5) . . . and which mention[] Peter Schiff"; and (3) "records . . . describing communications between any IRS employee and the Office of the Commissioner of Financial Institutions . . . and which mention Peter Schiff"). And others seek records on some subject that also mention the "Euro Pacific International Bank." *See e.g.*, *id.* at 28 (requesting "records . . . mentioning communications between any IRS employee and any tax authority of the United Kingdom and which mentions Euro Pacific International Bank Inc."). If a request for documents with his or the bank's name suffices, then so do those seeking a subset of that material. Indeed, no further effort from the IRS is required.

17

The outlook is similar for much of the final item in Schiff's request. He asks for all records "which mention any of the following" several "terms." June Request at 28. Some of these terms again overlap with earlier items on Schiff's list ("Peter Schiff," the "Euro Pacific International Bank Inc.," the "Euro Pacific Bank") and thus pose no issue. Others would prompt only the kind of "keyword" search by the IRS that suggests the request reasonably describes what it wants. *Am. Ctr. for L. & Just.*, 573 F. Supp. 3d at 85; *see id.* at 28–29 (listing for term searches: "Joint Chiefs of Global Tax Enforcement," "J5," "Atlantis," "The Atlantis Investigation," "Operation Atlantis," the "Office of the Commissioner of Financial Information," "OCIF").

But the end of this laundry list leads to a different outcome. Schiff wants materials that "mention" the "tax authority, or authorities" of the United States and four other countries. As the IRS points out, this request "could be read to include any document that mentions the IRS," Def.'s Mot. at 19, and it could likewise be read to include any document that mentions an entity with taxing power in any one of several countries. This is the kind of "[b]road, sweeping request[] lacking specificity" inappropriate for a FOIA request. *Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002). Schiff does not tether this request to a subject matter, a government entity, or even a country. Without meaningful guidance about what he seeks, no IRS employee "familiar with the subject area of the request" could "locate the record[s]" with any amount of "effort," much less a "reasonable" amount. *Pinson v. DOJ*, 245 F. Supp. 3d 225, 244 (D.D.C. 2017) (cleaned up). FOIA does not require agency officials to embark on a never-ending goose chase for unspecified documents that hopefully satisfy a FOIA requester. Because Schiff's final request does not allow the agency "to determine precisely what records are being requested," *Tax Analysts*, 117 F.3d at 610 (cleaned up), the IRS need not fulfill it.

If the IRS saw a failure to reasonably describe other items on Schiff's second request, it never alerts this Court of them. It spoke only in generalities about the entire FOIA request, zeroing in on Schiff's desire for documents featuring his name, and taxing authorities. *See* Def.'s Mot. at 18–19. The Court accordingly rules for Schiff on most of his second request.

Recapping Schiff's unwillingness to compromise does not help the IRS. It highlights Schiff's uncooperative attitude when it asked him to narrow his request shortly after he submitted it. *See* Def.'s Mot. at 20. But negotiation and compromise on FOIA requests is not a prerequisite to suing in federal court. *See* 5 U.S.C. § 552(a)(6)(A)–(C) (requiring only exhaustion). And now that Schiff is before this Court, his refusal to narrow his request before litigation ever began says nothing about whether the request was *already* narrow enough. That is the question now at hand.

Last and least, the IRS asserts that Schiff failed to specify the pertinent time frame for documents he sought. Def.s' Mot. at 20–21. Schiff's request identifies that time frame for "the creation" of records as "includ[ing] January 1, 2020" through the time of searching. June Request at 29. The IRS emphasizes that one could read that time frame as boundless because it "includes," rather than "starts from" the only date Schiff mentions. Def.s' Mot. at 20. That is thin gruel. While one *could* interpret the request to ask for documents from all time, such a reading ignores the context of the 2020 investigation that prompted his requests, *see* A. Scalia, A Matter of Interpretation 37 (1997) ("In textual interpretation, context is everything."); Schiff Decl. ¶ 18, and it "strains . . . common sense," *Hewitt v. Helms*, 482 U.S. 755, 763 (1987). The IRS cannot nitpick its way out of FOIA obligations.

The upshot of all of this is that for Schiff's second FOIA filing, the IRS need not fulfill Schiff's final request for materials mentioning the taxing authorities of various countries.

Otherwise, because Schiff reasonably described what he sought and the IRS mounted no other arguments, the Court grants him summary judgment on this issue.[3]

**IV.**

In sum, the Court holds:

- that the IRS performed an adequate search in response to Schiff's first request;

- that the IRS fell short of its burden to show FOIA Exemptions 5, 7(A), and 7(E) applied;

- That Schiff's last item in his second request (item 20k.) was too vague and did not merit a search, but Schiff's second request otherwise reasonably described the records he sought.

The IRS must now disclose the documents it has improperly withheld.

A separate Order will issue today.

**SO ORDERED**.

Dated: March 25, 2026

_____
TREVOR N. McFADDEN
United States District Judge

---

[3] The Court recognizes its duty to consider whether the IRS produced all segregable, nonexempt portions of documents even if neither party raises the issue. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). For Schiff's first request, the IRS failed to show the claimed exemptions apply to its documents altogether, so the Court need not consider whether the IRS properly withheld parts of them. For Schiff's second request, the IRS never started its search and thus has not claimed exemptions that would prompt a segregability analysis.

20